**IT IS ORDERED as set forth below:**




**Date: March 25, 2026**

Susan D. Barrett

United States Bankruptcy Judge
Southern District of Georgia

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | |
| JOY G. SMITH, | ) | Chapter 13 Case Number 19-10381 |
| Debtor. | ) | |
| SELENE FINANCE LP, | ) | |
| Movant, | ) | |
| v. | ) | |
| JOY G. SMITH, | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Before the Court is Selene Finance LP's ("Selene's") Motion to Reopen the Chapter 13 Case ("Motion to Reopen") of Joy G. Smith ("Debtor") and its Motion to Determine the Recoverability of PostPetition Escrow Advances ("Recovery Motion"). Dckt. Nos. 32, 33. In its Recovery Motion Selene requests a determination that it may recover $12,239.93 from Debtor for its payment of

postconfirmation ad valorem taxes and force-placed homeowner's insurance premiums ("Escrow Advances") and for an additional $900.00 for its preconfirmation review of Debtor's chapter 13 plan and filing its proof of claim ("Postpetition Fees"). Dckt. No. 33, at 2. The Court has subject matter jurisdiction, and these are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A)–(B), (I), and (K). For the following reasons, the Motion to Reopen is GRANTED, and the Recovery Motion is DENIED.

**FINDINGS OF FACT**

On March 25, 2019, Debtor filed her chapter 13 bankruptcy petition. Dckt. No. 1. Debtor's schedules disclose she owns a single-family home ("Property") secured by a loan from Selene.[1] Id. at 8, 20. The Property is Debtor's principal residence. Dckt. No. 50, at 3. Debtor values the Property at $60,555.00. Dckt. No. 1, at 8. Debtor lists Selene as holding a $10,901.16 claim. Id. at 20. It is undisputed that Selene's claim is oversecured—the value of the Property exceeds the outstanding debt. See id. at 8, 20.

The loan matured during the pendency of Debtor's chapter 13 plan. Proof of Claim No. 4-1, at 5, May 22, 2019 ("Claim No. 4-1"). Debtor filed her proposed chapter 13 plan in March 2019. Dckt. No. 5. Her plan proposed for Debtor to pay the chapter 13 trustee ("Trustee") $1,200.00 per month. Id. at 1. From these funds, Debtor proposed for the Trustee to pay Selene's allowed secured claim in full with 6% interest at a rate of $200.00 per month for five years. See id. § 4(d). The plan states "[h]olders of allowed secured claims shall retain the liens securing said claims to the full extent provided by 11 U.S.C. §1325(a)(5)." Id. § 10.

[1] The loan was transferred. Selene is the current holder of the mortgage, and the mortgagee is referred to as Selene throughout this opinion to avoid confusion.

Debtor's Schedule J, depicting her expenses, budgets for her to pay $100.00/month for real estate taxes and $100.00/month for property/homeowner's insurance but omits a separate line item expense for her mortgage payment to Selene because Selene's claim is included in her chapter 13 plan payment and thus was paid from her net monthly income. Id. §§ 2, 4(d); Dckt. No. 1 ¶¶ 4, 4a–4b, 23(c), at 39, 41.

Selene filed a secured claim in the amount of $11,492.20 with an annual interest rate of 6%. Claim No. 4-1, at 2. Selene attached a copy of the promissory note ("Note") and the security deed ("Security Deed") to the proof of claim. Id. at 5–15. Debtor did not file an objection to Selene's claim, and the $11,492.20 claim was paid in full with 6% interest during the pendency of the chapter 13 plan. Dckt. No. 26, at 1.

Selene received proper notice of the plan and did not object to confirmation, and the case was confirmed in July 2019. Dckt. No. 5, at 6–8; Dckt. No. 15. Thereafter, in August 2019, Selene filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice of Postpetition Fees" or "PPFN") on Official Form 410S2 for $900.00 in Postpetition Fees, comprised of the following:

> $300.00 incurred May 22, 2019 for Bankruptcy/Proof of claim fees;
> $350.00 incurred April 1, 2019 for Other, Specify: Plan/Review; and
> $250.00 incurred May 22, 2019 for Other, Specify: 410A Fee

See Claim No. 4, Notice of Postpetition Mortgage Fees, Expenses, and Charges at 1, Aug. 5, 2019. Selene filed the Notice of Postpetition Fees in the claims register as a supplement to its proof of claim pursuant to Bankruptcy Rule 3002.1. Id. The form provides "[t]he debtor or trustee may challenge whether the fees, expenses, and charges you listed are required to be paid." Id. The confirmed plan further provides "[t]he Trustee shall not pay any fees, expenses, or charges disclosed by a creditor pursuant to Fed. R. Bankr. P. 3002.1(c) unless the Debtor's[] plan is modified after the filing of the

notice to provide for payment of such fees, expenses, or charges." Dckt. No. 5 § 13; Dckt. No. 15. The plan was never modified to provide for these expenses, and the Trustee never paid this $900.00. See Dckt. No. 26, at 1.

Furthermore, in response to the Notice of Postpetition Fees, Debtor's counsel sent Selene's agent a letter stating:

> A Notice of Postpetition Mortgage Fees, Expenses and Changes was filed in [this] case. This loan is not subject to Bankr. Rule 3002.1 in that the debtor is not making contractual payments on this loan. Instead, the debt is being paid as a secured debt not subject to the anti-modification provisions of the [bankruptcy] code. Please make sure Selene [] is not adding post filing fees and expenses to the account. Upon discharge the lien should be released on debtor's property.

Dckt. No. 50, at 8. Selene did not respond, or take action, regarding this letter.

Given the plan treatment and the short-term nature of the debt—the last mortgage payment was due before the final plan payment—the parties now agree Bankruptcy Rule 3002.1[2] does not apply in this case. See Dckt. No. 49, at 2–3 (Selene notes since Rule 3002.1 was not "triggered," PPFNs are not required to be filed under Rule 3002.1); Dckt. No. 50, at 2–3, 8 (Debtor's counsel acknowledges Rule 3002.1 is not applicable to Selene's claim and asserted such a position at the hearings).

On May 1, 2024, at the end of Debtor's five-year chapter 13 plan, the Trustee issued her Notice to Debtor of Completion of Plan Payments and Notice of Final Cure Payments ("Final Cure Notice"), which provides in relevant part:

> [T]his notice [is issued] pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f) and General Order 2012-1 of the United States Bankruptcy Court for the Southern District of Georgia.
>
> The Trustee reports to the Court that the above-named Debtor has completed all payments under the confirmed Chapter 13 plan.

---

[2] Rule 3002.1 has since been amended.

> . . . .
>
> Name of Creditor: Selene Finance LP
> Mortgage on Debtor's Principal residence was paid in full, according to the Confirmed Plan, by the Trustee.
>
> . . . .
>
> **IF YOUR CLAIM WAS PAID BY THE TRUSTEE, THE DEBTOR HAS PAID IN FULL THE AMOUNT REQUIRED TO CURE ANY DEFAULT ON YOUR CLAIM AND REMAIN CURRENT POST FILING.**

Dckt. No. 26.

On May 22, 2024, Selene filed a Response of Notice of Final Cure Form 4100R ("Final Cure Response") acknowledging Debtor had cured her prepetition default, but stating she was "not current on all postpetition payments consistent with §1322(b)(5) of the Bankruptcy Code[,]" asserting the following items remain outstanding:

> a. Total postpetition ongoing payments due: (a) $0.00
> b. Total fees, charges, expenses, escrow and costs outstanding (PPFN Filed on 08/05/2019) (b) $900.00
> c. Total. Add lines a and b. (c) $900.00
> Creditor asserts that the debtor(s) are contractually obligated for the postposition payments(s) that first become due on <u>*Total Debt Plan</u>
> Notice of Post Petition Notice filed on 08/05/2019 in the amount of $900.00 is still outstanding. Escrow disbursement in the amount of $12,239.93.

<u>See</u> Claim No. 4, Response to Notice of Final Cure at 1, May 22, 2024. This Final Cure Response was filed within the time period set forth in the Final Cure Notice but after Debtor had completed making all her plan payments and sixty-one months after Debtor's first bankruptcy payment was due. <u>See</u> Dckt. No. 28 ¶ 5.

In accordance with the terms of the Final Cure Notice, Selene filed its Final Cure Notice in the claims registry, but no party in interest filed anything on the Court docket or requested a hearing or delay of the entry of discharge. See Dckt. No. 26, at 2.

On May 14, 2024, Debtor filed her Certification of Plan Completion and Request for Discharge ("Debtor's Certification and Request for Discharge"). Dckt. No. 27. Debtor's Certification and Request for Discharge was filed on the Court's docket and provides the request for discharge may be granted unless an objection is filed within 21 days of service. Id. Selene was duly served with Debtor's Certification and Request for Discharge but did not respond or object to entry of the discharge within the 21-day time frame. Id. As a result, discharge was entered on June 10, 2024, and the case was closed. Dckt. Nos. 29, 31. Thereafter, Selene filed the Motion to Reopen and the Recovery Motion to assert the claims addressed in this Order. Dckt. Nos. 32, 33.

Selene contends its "lien should remain on the Property until the remaining outstanding balance is paid in full. This includes any and all Postpetition Escrow Advances for tax and insurance disbursements [in the amount of $12,239.93]" comprised of:

| Description | Payment Date | Amount |
|---|---|---|
| County Tax | 09/23/19 | -$926.23 |
| Hazard Insurance | 11/13/19 | -$1,278.00 |
| County Tax | 09/08/20 | -$884.31 |
| Hazard Insurance | 11/19/20 | -$1,366.00 |
| County Tax | 09/23/21 | -$901.30 |
| Hazard Insurance | 11/18/21 | -$1,602.00 |
| Hazard Insurance | 12/22/21 | $47.00 |
| County Tax | 10/03/22 | -$510.50 |
| Hazard Insurance | 11/15/22 | -$1,994.00 |
| County Tax | 09/19/23 | -$432.72 |
| Refund of Real Estate Tax Money | 10/13/23 | $1.13 |
| Hazard Insurance | 12/20/23 | -$2,393.00 |
| Total: | | $12,239.93 |

See Dckt. No. 33 ¶ 5, 11.

Debtor acknowledges she did not pay these postpetition real estate taxes or homeowner's insurance premiums during the pendency of her chapter 13. Dckt. No. 50, at 5–7. At the October 2025 hearing, Selene's counsel confirmed the insurance payments made by Selene were for force-placed insurance.

Debtor contends Selene is bound by the terms of the confirmed plan and these claims are discharged. See id. Alternatively, Debtor contends Selene waived any reimbursement claim by its failure to comply with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§2601 et seq. Id. at 5. Conversely, Selene contends it retains its lien against the Property for Escrow Advances and Postpetition Fees because these amounts are owed by Debtor and remain unpaid. Dckt. No. 49, at 3. Selene acknowledges its obligation to comply with RESPA, and after opportunity, the parties agree all the RESPA-related communications sent by Selene are attached to Debtor's Second Responsive Brief and dated as follows:

| Statement Date |
| --- |
| 10/19/19 |
| 12/3/19 |
| 12/16/21 |
| 10/18/23 |
| 1/8/24 |
| 11/7/24 |
| 12/9/24 |
| 1/7/25 |
| 2/7/25 |

Dckt. No. 63, at 4–39.

**CONCLUSIONS OF LAW**

Selene seeks to reopen the bankruptcy to proceed with its Recovery Motion to determine the recoverability of the Escrow Advances and Postpetition Fees.

**Motion to Reopen.**

Section 350(b)[3] of the Bankruptcy Code provides "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). The statutory use of the word "may" suggests such relief is discretionary. See Renasant Bank v. Env't Wood Prods., Inc. (In re Env't Wood Prods., Inc.), 609 B.R. 901, 912 (Bankr. S.D. Ga. 2019) (the Bankruptcy Code does not define "other cause," and the decision to reopen a case is discretionary). Shortly after the entry of the discharge and case closure, Selene moved to reopen the case, and no party in interest, including Debtor, objected to this request to reopen. Also, both parties request the Court determine the nature of these claims and their recoverability. Given these facts and circumstances, reopening is in the best interest of all parties, and the Motion to Reopen is granted.

**Recovery Motion.**

For the following reasons, the Court finds Selene waived its right to collect the Escrow Advances by its failure to comply with RESPA.

**RESPA.**

> [RESPA] requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process . . . . [Among other things, the Act] requires [annual] disclosures for mortgage escrow accounts . . . itemizing the charges to be paid by the borrower and what is paid out of the account by the servicer.

[3] Unless otherwise expressly noted, all statutory citations are to Title 11 of the United States Code.

Fed. Deposit Ins. Corp., V-3 Real Estate Settlement Procedures Act (RESPA), Consumer Compliance Examination Manual (May 2018), https://www.fdic.gov/consumer-compliance-examination-manual/v-3-real-estate-settlement-procedures-act-respa (last visited Mar. 23, 2026). Selene acknowledged at hearings that it is required to comply with RESPA. See also Security Deed § 2 (referencing RESPA with respect to escrow account).

The applicable RESPA notification provisions for escrow accounts are found in 12 U.S.C. §2609 and 12 C.F.R. §1024.17 and provide:

> (b) Notification of shortage in escrow account
>
> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer (as the term is defined in section 2605(i) of this title) of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account.

12 U.S.C. §2609(b) (emphasis added).

> Notice of shortage or deficiency in escrow account. The servicer shall notify the borrower at least once during the escrow account computation year if there is a shortage or deficiency in the escrow account. The notice may be part of the annual escrow account statement or it may be a separate document.

12 C.F.R. §1024.17(f)(5);[4] see also 12 C.F.R. §1024.17(b) (requiring lender to perform an escrow account analysis before seeking repayment of a deficiency).

---

4 While 12 C.F.R. §1024.17(i)(2) provides an exception from providing annual escrow statements to borrowers in bankruptcy, no such exception exists for annual notices of escrow shortages or deficiencies required under 24 C.F.R. §1024.17(f)(5). 12 C.F.R. §1024.17(f)(5), (i)(2); see In re Dominique, 368 B.R. 913, 916 (Bankr. S.D. Fla. 2007) (exception "where the borrower is in bankruptcy proceedings . . . only applies to providing the annual statement required by 24 C.F.R. §3500.17(i)(l) [now 12 C.F.R. §1024.17(i)(2) (see Removal of Regulations Transferred to the Consumer Financial Protection Bureau, 79 Fed. Reg. 34224 (June 16, 2014)).]").

In this case, the relevant years for the Escrow Advances are 2019 through and including 2023 and involve escrow advances for ad valorem taxes and hazard insurance premiums made in those years.

**Ad Valorem Taxes.**

As shown on the chart below, notwithstanding Selene's payment of the outstanding tax bills, the only communications sent by Selene to Debtor for the Escrow Advances for taxes were for payments made in 2019 and 2023.

| Item | Payment Date | Amount | Communication Sent to Debtor? | Communication Date |
|---|---|---|---|---|
| County Tax | 09/23/19 | -$926.23 | Yes | 10/19/19 |
| County Tax | 09/08/20 | -$884.31 | No | |
| County Tax | 09/23/21 | -$901.30 | No | |
| County Tax | 10/03/22 | -$510.50 | No | |
| County Tax | 09/19/23 | -$432.72 | Yes | 10/18/23 |
| Refund of Real Estate Tax Money | 10/13/23 | $1.13[5] | Yes | 10/18/23 |

See Dckt. No. 33, at 2; Dckt. No. 63, at 4–39. Selene did not send any notices to Debtor for tax payments made in 2020, 2021, and 2022. See Dckt. No. 63, at 4–39. Furthermore, the communications sent by Selene which reference tax payments made in 2019 and 2023 fail to comply with RESPA's notice provisions for escrow shortages/deficiencies. Id. at 5, 17.

First, both the 2019 and 2023 communications were sent to Debtor's bankruptcy counsel, not Debtor. Dckt. No. 63, at 4–6, 16–19. In addition, the 2019 communication fails to identify Debtor by name anywhere. See id. at 4–6. In fact, Debtor's counsel is listed as the "Mortgagor." Id. at 4. The only information linking the 2019 tax communication to Debtor is the last 4 digits of the account number and the Property address. Id. at 4–6. This does not satisfy RESPA's notice requirements

[5] This amount pertains to a credit, not a charge.

because, at the very least, the communication sent Debtor's counsel failed to sufficiently identify Debtor or the Property. Debtor's counsel maintains a large consumer bankruptcy practice throughout the Southern District of Georgia, and mere reference to the street address and last four digits of an account number is insufficient to constitute notice.

Similarly, the 2023 communication for tax payment also is inadequate. It merely denotes an "escrow advance" without denoting the advance was for ad valorem taxes, or that there is a shortage. See id. at 17. The "explanation of outstanding balances" references "escrow (taxes and insurance)," but it fails to provide any information on how that balance was calculated or the tax component of the sum. Id. Additionally, the document lists $930.00 in recoverable advances but provides no information or description of the composition of this amount, including whether there is any tax component. Id. Based on this, the Court finds Selene did not comply with the notification provisions of RESPA for these taxes.

**Hazard Insurance.**

Selene also seeks to recoup the following Escrow Advances related to force-placed insurance it placed upon the Property:

| Item | Payment Date | Amount | Communication Sent to Debtor? | Communication Date |
|---|---|---|---|---|
| Hazard Insurance | 11/13/19 | -$1,278.00 | Yes | 12/3/19 |
| Hazard Insurance | 11/19/20 | -$1,366.00 | No | |
| Hazard Insurance | 11/18/21 | -$1,602.00 | Yes | 12/16/21 |
| Hazard Insurance | 12/22/21 | $47.00 | No[6] | |
| Hazard Insurance | 11/15/22 | -$1,994.00 | No | |
| Hazard Insurance | 12/20/23 | -$2,393.00 | Yes | 1/8/24 |

6 This amount pertains to a credit, not a charge.

See Dckt. No. 33, at 2; Dckt. No. 63, at 4–39.

In regards to force-placed insurance, RESPA requires lenders to provide borrowers with prior notice before procuring force-placed insurance. 12 U.S.C. §2605(l)(1) ("A servicer may not impose any charge on any borrower for force-placed insurance . . . unless . . . the servicer has sent, by first-class mail, a written notice to the borrower" containing specified information regarding its intent to obtain such coverage) (emphasis added); see also 12 C.F.R. §1024.37(c)–(d) (requiring two notices before charging borrower for force-placed insurance) (emphasis added); 12 C.F.R. §1024.37(e) (requiring at least annual notice when renewing or replacing existing force-placed insurance).

For the following reasons, the Court finds Selene failed to timely provide Debtor with the force-placed notices:

First, Selene did not provide any notice for the insurance payments it made in 2020 or 2022. See Dckt. No. 63, at 4–39. Furthermore, the insurance communications tendered by Selene for payments made in 2019, 2021 and 2023 reflect the force-placed insurance was procured by Selene before any notice was sent to Debtor. See id. Therefore, the Court finds Selene has not complied with the RESPA provisions requiring notice for force-placed insurance be sent to Debtor prior to obtaining the coverage and therefore may not impose any charge upon Debtor for this coverage. 12 U.S.C. §2605(l)(1); see, e.g., 156 Cong. Rec. H5233-01, H5238 (2010) (pre-RESPA "lenders often impose[d] costly force-placed insurance, even though the homeowner may already have a hazard insurance policy. [RESPA] . . . clarif[ies] the procedures for when a servicer can force place insurance.").

For these reasons, the Court finds that Selene did not comply with RESPA's notice requirements for the Escrow Advances for both taxes and force-placed insurance.[7]

The issue then becomes the appropriate remedy for Selene's failure to comply with RESPA. "[T]he majority of courts have determined that the proper remedy for a failure to abide by the required notice of escrow account analysis under RESPA is essentially a death knell: deeming a waiver of any right to recover any deficiencies encompassed by the failed period." In re Tavares, 547 B.R. 204, 220–21 (Bankr. S.D. Tex. 2016) (citing In re Garza, 2012 WL 4738651, at *3 (Bankr. S.D. Tex. 2012)); see also In re Dominique, 368 B.R. 913, 921–22 (Bankr. S.D. Fla. 2007) (lender waived its claim for postpetition escrow advances, including taxes and insurance, by failing to comply with RESPA and state law); Chase Manhattan Mortg. Corp. v. Padgett (In re Padgett), 268 B.R. 309, 313–14, n.8 (S.D. Fla. 2001) (lender failed to comply with RESPA's notice requirements and waived its right to collect escrow advances for taxes and insurance); In re Johnson, 384 B.R. 763, 775–76 (Bankr. E.D. Mich. 2008) (lender's failure to comply with RESPA's notice requirements was factor in finding lender waived its right to recoup escrow advances for taxes and insurance). Given the particular facts and circumstances of this case, the Court agrees and joins these other courts in finding waiver the appropriate remedy.

Under federal law, "[w]aiver is the voluntary, intentional relinquishment of a known right." Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994). Georgia's waiver law is substantially similar. See Thompson v. State Farm Fire and Cas. Co., 264 F. Supp. 3d 1302, 1320 (M.D. Ga. 2017) ("In order for a factfinder to infer that a party has waived a contractual right,

---

7 While not at issue in this case, lenders are well-versed in the precautions necessary to comply with RESPA and avoid stay/discharge injunction violations.

'all the attendant facts, taken together, must amount to an intentional relinquishment of a known right.'") (citing Forsyth Cty. v. Waterscape Servs., LLC, 694 S.E.2d 102, 109 (Ga. Ct. App. 2010) (citations omitted)). "Waiver of a contractual right 'may be inferred from actions, conduct, or a course of dealing.'" Thompson, 264 F. Supp. 3d at 1320 (citations omitted).

RESPA and the Security Deed require notice:

> As noted above, the mandate of both RESPA and the Code of Federal Regulations is clear. The servicer must do an annual analysis and must provide an annual statement. [12] C.F.R. §[1024].17(b), referencing §[1024].17(f) states, "if a servicer advances funds for a borrower, then the servicer must perform an escrow account analysis before seeking repayment of the deficiency." Once the annual determination of a shortfall or deficiency is made, any adjustment, should the servicer choose to seek an adjustment, must be made in accordance with [12] C.F.R. §[1024].17(f). However, there is no option to adjust the escrow account for a shortfall or deficiency unless the annual analysis is completed and annual notice provided.

In re Dominique, 368 B.R. at 921; see Security Deed §2 ("If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, the Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA."). Additionally, RESPA and the Code of Federal Regulations clearly mandate notice is required before a servicer assesses any charges on a borrower related to force-placed insurance. See 12 U.S.C. §2605(l); 12 C.F.R. §1024.37(c)–(e). Given the facts and circumstances of this case, the Court finds Selene waived its right to recoup these sums by failing to provide Debtor with the notices required by RESPA and the Security Deed. See In re Dominique, 368 B.R. at 915, 921 (analyzing language nearly identical to that in the current Security Deed and holding the lender waived the right to recoup the funds by failing to send the proper notices). In this case, Selene failed to meet the conditions precedent to seeking recoupment of these sums, and

since that failure cannot be cured (the opportunity for advance notice and annual period in question having passed), the Court finds Selene is not entitled to seek payment of the Escrow Advances. Id.[8]

**Postpetition Fees.**

In August 2019, Selene filed the PPFN for $900.00 in Postpetition Fees incurred postpetition and preconfirmation. See Claim No. 4, Notice of Postpetition Fees, Expenses, and Charges at 1, Aug. 5, 2019. As previously discussed, Debtor's counsel notified Selene that Rule 3002.1 did not apply because Debtor was not making contractual installment payments. Dckt. No. 50, at 8 ("This loan is not subject to Bankr. Rule 3002.1 in that the debtor is not making contractual payments on this loan."). Debtor's plan also expressly provides "[t]he Trustee shall not pay any fees, expenses, or charges disclosed by a creditor pursuant to Fed. R. Bankr. P. 3002.1(c) unless the Debtor's[] plan is modified after the filing of the notice to provide for payment of such fees, expenses, or charges." Dckt. No. 5 ¶ 13; see Dckt. No. 15; see also General Order Number 2012-1 (Bankr. S.D. Ga. Dec. 4, 2012) (same). The plan was never modified to provide for these expenses, and the Trustee never paid this $900.00. See Dckt. No. 26, at 1. Selene now agrees Rule 3002.1 does not apply. Since the rule does not apply, these fees are not recoverable pursuant to the procedures in Rule 3002.1. The issue becomes whether the fees are otherwise recoverable. For the following reasons, the Court determines they are not recoverable.

---

[8] Since the Court finds Selene is not entitled to recoup these sums, it need not reach the "daunting compendium of post-petition moving parts" comparable to unwinding a Gordian Knot, especially in the context of a short-term mortgage – one maturing during the pendency of the chapter 13. In re Tavares, 547 B.R. at 205.

It is undisputed that Selene is an oversecured creditor—the Property's value exceeds the outstanding debt. See Dckt. No. 1, at 8, 20. Section 506(b) of the Bankruptcy Code provides "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. §506(b) (emphasis added). The Eleventh Circuit recognizes the applicability of §506(b) to attorney's fees incurred postpetition and preconfirmation. Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1338–39 (11th Cir. 2000). Furthermore, the Note allows Selene to collect reasonable and customary attorneys' fees. Claim No. 4-1, § 6(C), at 6.

Thus, the Postpetition Fees fall under §506(b) which requires an analysis of whether the fees are reasonable under the lodestar approach, considering the hours reasonably spent and the reasonable hourly charge. See generally Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1299–1302 (11th Cir. 1988); see also Bank of the Ozarks v. Coastal Realty Invs., Inc. (In re Coastal Realty Invs., Inc.), No. 12-20564, 2014 WL 929612, at *13 (Bankr. S.D. Ga. Mar. 10, 2014) ("Bankruptcy courts in the Eleventh Circuit apply the 'lodestar analysis' to determine the reasonableness of an oversecured creditor's attorneys' fees" under §506(b).). The Notice of Postpetition Fees lists the following three charges:

> $300.00 incurred May 22, 2019 for Bankruptcy/Proof of claim fees;
> $350.00 incurred April 1, 2019 for Other, Specify: Plan/Review; and
> $250.00 incurred May 22, 2019 for (Other, Specify: 410A Fee)

See Claim No. 4, Notice of Postpetition Fees, Expenses, and Charges at 1, Aug. 5, 2019. "[O]ver-secured creditors have the ultimate burden of proof of showing they are entitled to post-petition fees. . . ." In re Jack Kline Co., Inc., 440 B.R. 712, 732–33 (Bankr. S.D. Tex. 2010). The only evidence in

the record from which to determine whether the Postpetition Fees are reasonable is the Notice of Postpetition Fees. However, the Notice of Postpetition Fees does not include any time records of the work performed, by whom, and at what hourly rate. For these reasons, the Court finds Selene has not met its burden of establishing these postpetition, preconfirmation fees are reasonable, and they are denied.

**Unjust Enrichment.**

Even if the Court denies Selene's claim on the merits, Selene contends it is entitled to recoup these amounts under the doctrine of unjust enrichment and the Court's equitable §105 power. Dckt. No. 33 ¶ 12; see also Dckt. No. 49, at 4–5. Selene contends Debtor should not be unreasonably and unjustly enriched from Selene's payment of the taxes and insurance on Debtor's behalf. Id. Given the facts and circumstances of this case, the Court denies Selene's claim of unjust enrichment.

The elements of an unjust enrichment claim are that "(1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) (citations omitted). In this case, neither party presents factually appealing or sympathetic positions. First, Debtor received the benefit of Selene's payment of her outstanding ad valorem taxes and insurance premiums for five years, and now seeks to be absolved from any responsibility for these obligations. As a homeowner, Debtor should be aware such charges are due and owing. On the other hand, Selene is now "springing" this large outstanding indebtedness in excess of $12,000.00 (more than the amount Debtor owned Selene when she filed her bankruptcy) on a debtor just emerging from bankruptcy subsisting on social security retirement benefits. Selene knew with each advance that Debtor had not

paid these sums, and yet it failed to timely and adequately notify Debtor of any of these Escrow Advances.

The Bankruptcy Code provides Selene with many avenues to pursue and protect its interests during the pendency of the bankruptcy. See, e.g., §362(d) (motion for relief from stay). The facts of this case highlight the implications of Selene's failure to timely comply with RESPA or take action during the pendency of the case. Had these claims been timely raised, Debtor may have been able to modify her chapter 13 bankruptcy plan to pay these sums during bankruptcy. She also may have been able to reexamine her budget to address these expenses as they arose or reduce the dividend she paid to her unsecured creditors (she paid a dividend of more than 93%[9]) to accommodate these expenses. Furthermore, she most likely would have been able to obtain hazard insurance at a much lower premium than a force-placed policy obtained by Selene.

Instead, Selene did not bring these issues before the Court until 64 months after Debtor filed her bankruptcy, foreclosing Debtor's opportunity to address these issues in this bankruptcy. See §1322(d) ("[A chapter 13] plan may not provide for payments over a period that is longer than . . . 5 years."); Baxter v. Evans (In re Evans), 183 B.R. 331, 332 (Bankr. S.D. Ga. 1995) (chapter 13 plan payments must be concluded within five years of the date the first plan payment was due); Macon v. Meredith (In re Macon), 669 B.R. 626, 661 (Bankr. S.D. Ga. 2025) (a modification cannot extend a plan beyond five years). Now, Debtor is faced with Selene's contention that she owes Selene more than she did when she commenced her bankruptcy and after paying her unsecured creditors a dividend in excess of 93%. While certainly not condoning Debtor's failure to pay these items, there is nothing in the record indicating Debtor undertook any unconscionable or bad faith conduct. Debtor is on a

[9] Most likely driven by the equity in the home.

fixed income and provided for the payment of her mortgage through her chapter 13 plan. She did not obtain the required notices from Selene to timely address these additional sums owed. It is not unjust to deny Selene's Recovery Motion given these particular facts and circumstances. For these same reasons, Selene's request for the Court to declare Debtor was unjustly enriched or to use its equitable §105 powers to allow Selene to recoup these fees is denied. See §105(a) ("The court may issue any order, process, or judgment that is necessary to appropriate to carry out the provisions of this title . . . .").

For these reasons, it is ORDERED that:

(1) Selene's Motion to Reopen is GRANTED; and

(2) Selene's Recovery Motion is DENIED.

**[END OF DOCUMENT]**